IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANICE G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 4:25-cv-368-P-BN |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case filed under 42 U.S.C. § 405(g) for review of a final decision of the

Commissioner of Social Security has been referred to the undersigned United States

magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing

order of reference from United States District Judge Mark T. Pittman.

The Commissioner denied Plaintiff Janice G.'s claim for disability insurance

benefits, and Plaintiff argues that the Commissioner's decision should be reversed,

and this case remanded for further proceedings, because (1) the administrative law

judge ("ALJ") failed to support the residual functional capacity ("RFC") with any

medical opinion and improperly relied on his own interpretation of the evidence; (2)

the ALJ failed to capture all of Plaintiff's mental limitations in the RFC; and (3)

subjective symptom analysis was unsupported. *See generally* Dkt. No. 14.

The Commissioner filed a brief in response, and Plaintiff replied. *See* Dkt. Nos.

22 & 23.

And, for the following reasons, the Court should reverse the hearing decision

and remand this case remanded to the Commissioner for further proceedings.

## Legal Standards

"To qualify for Title II disability-insurance benefits, a claimant must prove a 'disability,' meaning a 'medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.'" *Hicks v. Comm'r, Soc. Sec. Admin.*, No. 24-10826, 2025 WL 1166147, at *1 (5th Cir. Apr. 22, 2025) (per curiam) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (in turn citing 42 U.S.C. § 423(d)(1)(A))).

"The Commissioner employs a sequential, five-step inquiry to determine whether a claimant is disabled," *id.* at *2 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)), under which the considerations are:

> (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has "a severe medically determinable physical or mental impairment" of sufficient duration; (3) if so, whether her impairment meets or equals a listing in the regulatory appendix; (4) if not, whether the claimant can perform her "past relevant work" given her "residual functional capacity" (RFC); and (5) if not, whether the claimant can adjust to other work given her RFC, age, education, and work experience.

*Id.* at *2 n.5 (citations omitted).

"The claimant bears the burden of proof until the last step, when the burden shifts to the Commissioner." *Id.* at *2 (citing *Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024)).

And a federal court's review of the Commissioner's "determinations 'is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards

when evaluating the evidence.'" *Id.* (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam); citing 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")).

"Substantial evidence means 'more than a scintilla, but it need not be a preponderance.'" *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[Substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)))).

### Analysis

Plaintiff first argues that the ALJ's RFC is not supported by substantial evidence where it's not supported by a medical opinion and the ALJ instead relied on his own interpretation of the evidence.

And the Commissioner "concedes that the ALJ did not find any medical opinion or prior administrative finding in the record to be persuasive prior to making a determination on Plaintiff's RFC," Dkt. No. 22 at 9 (citing Dkt. No. 12-1 at 25-26), but the Commissioner contends that there was nothing wrong with this approach and that court decisions holding otherwise are just wrong.

To frame this alleged error, it's helpful to first set out the ALJ's analysis at step four:

> **5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to**

**perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb, balance, stoop, kneel, crouch, and crawl; she can understand, remember, and carry out detailed but not complex tasks and instructions; and she is limited to environments with noise levels of quiet or moderate as defined in the Selected Characteristics of Occupations.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)-- i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

During the hearing, the claimant alleged disability due to a combination of severe mental and physical impairments. More specifically, the claimant testified that symptoms such as radiating spine pain, hip pain, and extremity pain and numbness limit her ability to engage in prolonged physical activity such as standing, walking, and lifting/carrying. As for her mental impairments, the claimant explained that her symptoms have included anxiety around crowds, daily panic attacks, poor memory and concentration, and mood instability. (Hearing).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The objective medical evidence does not provide strong support for the claimant's allegations of disabling physical or mental impairments. As to her physical impairments, objective imaging has documented generally mild degenerative changes in the claimant's hips, hands, and lumbar spine, with up to moderate degenerative changes being limited to her cervical spine. The claimant has received limited treatment for her various orthopedic conditions, primarily in the form of chiropractic and acupuncture sessions. The medical records also do not document substantial functional deficits, such as the loss of strength, sensation, or mobility. As to her mental impairments, the claimant has received very limited treatment primarily in the form of as-needed anxiety medications and a limited series of therapy sessions. The absence of nearly any mental health treatment, particularly the lack of even routine anti-depressant medication, is inconsistent with the alleged severity of the mental health conditions. Moreover, even with the limited mental health treatment, the medical records do not document significant objective deficits such as memory loss, a limited attention span, or other cognitive deficits.

Turning to the medical records in more detail, the claimant has been diagnosed with degenerative disc disease of the lumbar and cervical spine, osteoarthritis of hips, and osteoarthritis of hands. (2F/202, 3F/9, 9F/51-52, Hearing). During the period relevant to this case, the claimant's subjective complaints relating to the conditions included radiating spine pain, hip pain, and extremity pain and numbness. (2F/202, 3F/7, 9F/338, Hearing). The claimant's prescription regimen has included Meloxicam and Advil. (2F/196, 9F/57). Physical examinations of the claimant generally show that she had a normal gait (4F/212, 4F/81, 5F/118, 9F/293), a normal range of motion (3F/14, 3F/43, 3F/114), and that her motor function was intact (2F/212, 3F/14, 3F/124-125, 4F/81). The claimant's sensation and reflexes were intact, and straight leg raise testing was negative bilaterally. (3F/9, 3F/125, 4F/81). However, other physical examinations did reveal tenderness to palpation of the spine, a limited and painful range of motion in the spine, and reduced lower extremity motor strength. (3F/8-9, 3F/42, 4F/80-81, 4F/113, 6F/26, 7F/4, 9F/51). The claimant is also described as having a slow gait during some examinations. (9F/122). A May 2023 imaging study of the claimant's lumbar spine revealed "mild" multilevel degenerative changes. (9F/51-52). Somewhat similarly, imaging has revealed "mild" degenerative joint disease of the bilateral hips. (2F/201).

The claimant's severe impairments also include migraines. (5F/322). During the period relevant to this case, the claimant's subjective complaints relating to the conditions included recurrent migraine headaches. (1F/6, 2F/101, 3F/7, 5F/175, 9F/62, 9F/261). The claimant's prescription regimen has included Riboflavin rather than any

of the more advanced treatments for migraines. (9F/251). Physical examinations of the claimant generally show that her cranial nerves were intact and that she was in no acute distress. (4F/113, 9F/122, 9F/293).

I am cognizant of the substantial overlap in symptomology between different mental impairments and the inherently subjective nature of psychological impairment diagnosis. Thus, psychological symptoms and their effect on functioning are considered regardless of diagnostic label. The claimant has been diagnosed with major depressive disorder, post-traumatic stress disorder, and anxiety disorder. (8F/5). The claimant reported experiencing symptoms such as excessive worry, mood instability, difficulty with memory and concentration, and difficulty sleeping to examiners. (2F/122, 8F/8, 9F/57, Hearing). The claimant's prescription regimen has included as-needed anti-anxiety medications (typically, Clonazepam or Xanax prescriptions prior to traveling) and, very recently, Sertraline. (9F/49). The claimant's mental status examinations revealed her to be alert and oriented (2F/258, 4F/81, 5F/118, 9F/40), with a normal mood and affect (4F/113, 9F/41, 9F/339), and normal memory (2F/258, 9F/41). However, other examinations show that the claimant presented with a depressed mood and affect, and that she became agitated on some occasions. (9F/94, 9F/507, 9F/512).

I have considered other factors in assessing the claimant's reports of pain and other symptoms, and how those factors affect the claimant's ability to work. These include the following: the claimant's daily activities; the nature of the symptoms; precipitating and aggravating factors; the medications and any side effects; and other treatment followed and measures used to relieve the symptoms. See 20 CFR 404.1529 and Social Security Ruling 16-3p. In this case, despite the claimant's allegations of headaches, radiating spine pain, limited mobility, and extremity pain and numbness, the evidence of record does not fully support her allegations about the severity of these symptoms. As noted above, the record reveals that the claimant's motor strength was intact (2F/212, 3F/14, 3F/124-125, 4F/81), she had a normal gait (4F/212, 4F/81), and that she had a normal range of motion during some examinations (3F/14, 3F/43, 3F/114). The claimant has also reported an improvement in at least some of her symptoms following several sessions of physical therapy. (3F/63, 6F/20). In February 2023, the claimant reported that her activities of daily living had improved to a point where she did not feel the need to take medications. (3F/148).

As for her mental impairments, the claimant had a normal mood and affect (4F/113, 9F/41, 9F/339), she was alert and oriented (4F/81, 5F/118, 9F/40), and normal memory (9F/41), which is inconsistent with the claimant's testimony and subjective allegations. In August 2023,

examiners noted that the claimant was not under the management of a mental health provider; the claimant was advised to follow up with a mental health provider. (9F/253). It is also noted that the claimant denied experiencing any psychological symptoms during several examinations. (3F/13, 3F/114, 3F/198). Furthermore, the claimant herself reported performing some largely independent daily activities, including operating a motor vehicle, preparing simple meals, watching television, and household chores such as laundry and cleaning. (9F/93, 9F/584, Hearing). As such, I find that the claimant's allegations are generally not consistent with the objective evidence of record.

As for medical opinion(s) and prior administrative medical finding(s), I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. I have fully considered the medical opinions and prior administrative medical findings in this case. I did not address evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c).

State agency consultants found that there was insufficient evidence to evaluate the claimant's claim. The State agency supported this finding by noting that the claimant failed to provide certain documents regarding her activities of daily living and work history. (2A, 4A). The claimant subsequently provided these documents. (5E, 6E). However, there are no findings from the state agency to evaluate for persuasiveness.

Mrudula Jakkula, M.D., opined that the claimant would have difficulty with prolonged walking, difficulty with stairs, difficulty with prolonged sitting, and difficulty with lifting/carrying. (2F/202). This opinion is generally unpersuasive. Initially, it is unclear whether the statement represents the doctor's assessment of the claimant's ability or is claimant's statement as to the alleged impact of her conditions on her ability to work. Even assuming the statement is the doctor's assessment, it has limited persuasive value due to the use of vague language. The opinion does not quantify or qualify the claimant's alleged limitations and instead uses undefined terms such as "prolonged" and "difficulty." Work-related limitations are restrictions which identify the skills and abilities the claimant possesses after all the impairments are taken into consideration. The list of work-related limitations can be used to determine whether the individual can return to any past job, and, whether any jobs exist in the national economy that the individual can perform. Vague terms do not convey characteristics of work such as frequency, duration, intensity and persistence of work performance.

The record also contains a statement from a vocational counselor who asserted that the claimant's mental conditions would preclude her

from performing her past work or any other work (10E). I find this statement is not a medical opinion that must be evaluated for persuasiveness. A medical opinion is a statement from an acceptable medical source (20 CFR 404.1527). As this statement is not provided by an acceptable medical source, it is evaluated pursuant to 20 CFR 404.1527(f). I find the statement to have limited persuasive value for several reasons. First, it is not based on any medical finding as to the claimant's alleged limitations (e.g., that she would be unable to complete a normal workweek due to unpredictable mental health symptoms). Rather, the statement appears based primarily on the claimant's subjective allegations as to the effect of her mental impairments. As noted above, the claimant's subjective allegations are generally inconsistent with the objective medical records. Second, the statement does not address the lack of any apparent mental health treatment in the year or two prior to the issuance of the statement. The failure to acknowledge the lack of treatment, or to consider the effect of even a basic level of mental health treatment, renders this statement of limited persuasive value.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the claimant's activities of daily living, and the record as a whole. Even though the record indicates that the claimant does have some limitations due to her impairments, the record also shows that the claimant's impairments are not as limiting as she has alleged. Due to the claimant's degenerative disc disease of the lumbar and cervical spine, osteoarthritis of hips, osteoarthritis of hands, and migraines, I find that the claimant should be limited to light exertional work, where she would only occasionally climb, balance, stoop, kneel, crouch, and crawl. Affording the greatest possible weight to her subjective allegations, I find that she can understand, remember, and carry out detailed but not complex tasks and instructions. Due to her anxiety and migraines, she is limited to noise levels of quiet or moderate as defined in the Selected Characteristics of Occupations.

Dkt. No. 12-1 at 22-26.

No doubt, "[a]n 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *accord Garrett R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-829-D-BK, 2023 WL 5418301, at *3 (N.D. Tex. July 20, 2023) ("The RFC determination falls solely to the ALJ, who is responsible for

resolving any conflicts in the evidence." (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam))), *rec. adopted*, 2023 WL 5415283 (N.D. Tex. Aug. 22, 2023).

> In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." "Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion."

*Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam) (quoting *Webster*, 19 F.4th at 718).

> [And t]he RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.

*Hess v. Kijakazi*, Civ. A. No. 22-5305, 2023 WL 8696374, at *8 (E.D. La. Oct. 20, 2023) (footnotes omitted), *rec. adopted*, 2024 WL 1231327 (E.D. La. Mar. 22, 2024).

And, so, "[t]here is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:22-cv-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (quoting *Carson v. Comm'r of Soc. Sec.*, No. 6:21cv12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), *rec. adopted*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022).

Which makes sense because the RFC assessment itself "is not a medical opinion." *Carson*, 2022 WL 2525438, at *7 (citing *Joseph-Jack v. Barnhart*, 80 F.

App'x 317, 318 (5th Cir. 2003) (per curiam)).

And, again, "[u]nlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record." *Id.* (citing 20 C.F.R. § 404.1529); *see, e.g., Robert D.D.*, 2022 WL 16935248, at *4 ("The ALJ articulated the reasons for her persuasiveness findings, incorporated Dr. Curtis' finding that Plaintiff had severe mental limitations and imposed more restrictive limitations than those found by the SAPCs. Although the ALJ's mental RFC finding does not mirror the SAPC's medical opinions, 'it cannot be said that [the ALJ's] decision was not based on substantial evidence.'" (quoting *Webster*, 19 F. 4th at 71)).

But, as the Commissioner admits, here, "the ALJ did not find any medical opinion or prior administrative finding in the record to be persuasive prior to making a determination on Plaintiff's RFC." Dkt. No. 22 at 9; *compare* Dkt. No. 12-1 at 25-26 (concluding that "there are no findings from the state agency to evaluate for persuasiveness"; that, as to a doctor's opinion, "it is unclear whether the statement represents the doctor's assessment of the claimant's ability or is claimant's statement as to the alleged impact of her conditions on her ability to work"; that, "[e]ven assuming the statement is the doctor's assessment, it has limited persuasive value due to the use of vague language"; and that, "a statement from a vocational counselor who asserted that the claimant's mental conditions would preclude her from

- 10 -

performing her past work or any other work … is not a medical opinion that must be evaluated for persuasiveness"), *with Griffin v. O'Malley*, SA-23-CV-01090-FB, 2025 WL 440284, at \*7 (W.D. Tex. Jan. 17, 2025) ("The only other opinions of record for ALJ Brown to consider were (1) the opinion of Dr. Culver from 2016, which ALJ Brown rejected as unpersuasive due to it being outdated; and (2) a physical therapist evaluation stating Griffin might be disabled from work due to difficulties sitting, lifting and standing, which ALJ Brown determined was not an opinion from an acceptable medical source. Accordingly, ALJ Brown did not rely on any medical opinion, consultative examination, or medical source statement in evaluating Griffin's work-related limitations and determining his RFC." (citation omitted)), *rec. accepted*, 2025 WL 440281 (W.D. Tex. Feb. 7, 2025).

And, where an ALJ completely rejects all the medical opinions in the record, and then makes an RFC determination, *see, e.g.*, Dkt. No. 12-1 at 26 (summing up that the RFC "is supported by the objective medical evidence, the claimant's activities of daily living, and the record as a whole"), that determination is not supported by substantial evidence, *see, e.g.*, *Garrett R.*, 2023 WL 5418301, at \*4 ("The problem with the ALJ's RFC finding is, as Plaintiff argues, that the ALJ rejected the only medical opinion addressing or touching on Plaintiff's conditions' effects on his ability to work and instead relied on progress notes and the longitudinal record, which in themselves do not address Plaintiff's work limitations. And, while the ALJ considered evidence of Plaintiff's daily activities, it is difficult to decipher the connection between these activities and the ALJ's determination about the effect of Plaintiff's impairments on

his ability to hold down a full-time job. In sum, the ALJ improperly made an RFC finding with no supporting medical opinion that purports to address the effects of Plaintiff's impairments on his ability to perform work-related tasks." (citing *Ripley*, 67 F.3d at 557 n.27 ("Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's condition, no matter how 'small,' on his ability to perform sedentary work."))); *see also id.* ("Judges of this court have consistently found that an ALJ contravenes *Ripley* under the circumstances presented here." (collecting cases)); *Griffin*, 2025 WL 440284, at *7 (W.D. Tex. Jan., 17, 2025) ("The Fifth Circuit has made clear that an ALJ 'may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.'" And "[n]umerous district courts have relied on this principle in vacating RFC determinations that are not supported by an actual medical opinion and instead are based on the ALJ's subjective interpretation of the medical data in the record." (quoting *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citing *Ripley*, 67 F.3d at 557–58); collecting cases)); *Moreira v. Comm'r of Soc. Sec. Admin.*, EP-24-CV-00021-KC-MAT, 2025 WL 1090895, at *5 (W.D. Tex. Feb. 27, 2025) ("In the instant case, the ALJ's RFC is supported by substantial evidence because the ALJ conducted a persuasiveness analysis for each medical opinion and incorporated this analysis into Plaintiff's RFC. Plaintiff's assertion – that as in *Ripley* and *Williams*, the ALJ rejected all the medical opinions on record and relied on their

- 12 -

lay opinion – is misplaced because the ALJ did not fully reject each medical opinion."), *rec. adopted*, 2025 WL 943413 (W.D. Tex. Mar. 28, 2025).

In sum, there is a "critical difference between outright rejecting all medical opinions before creating an RFC based solely on the ALJ's own interpretation of the medical evidence and an ALJ's finding that a medical source opinion is somewhat persuasive while adding additional limitations." *Hess*, 2023 WL 8696374, at *9 (collecting cases); *compare id.* at *10 ("This was not a *Ripley* error. The ALJ did not reject entirely all of the medical opinions and independently interprets the raw medical data to craft an RFC based solely on his own interpretation of medical data and without any supporting medical opinion; rather, he found the medical opinions somewhat persuasive and relied on them, coupled with other record evidence, to exercise of his responsibility to determine the Claimant's RFC based on all of the evidence of record." (footnote omitted)), *with Tiede v. Dudek*, 770 F. Supp. 3d 965, 973 (W.D. Tex. 2025) ("The Commissioner also cites Fifth Circuit case law as support for the propositions that medical opinions are not determinative and that ALJs need not adopt an RFC from a medical opinion. *See Webster*, 19 F.4th at 719; *Thompson v. Soc. Sec. Admin.*, No. 23-30702, 2024 WL 1886757, at *2 (5th Cir. Apr. 30, 2024); *Miller*, 2023 WL 234773, at *4. The Court agrees with these propositions – but they are inapposite to this case. None of these cases concluded that an ALJ could properly determine a claimant's RFC without any medical opinion being present in the record. The ALJ therefore erred in making an RFC determination based on her own interpretation of the medical evidence, rather than developing the record." (cleaned

up)).

This *Ripley* error is prejudicial, and, so, remand is required. "An error is not harmless if it affected a claimant's substantial rights and casts doubt on the existence of substantial evidence and the outcome of the proceedings." *Griffin*, 2025 WL 440284, at *9 (citing *Taylor*, 706 F.3d at 603; *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008), and concluding that, "[h]ad the ALJ obtained an updated medical opinion or medical source statement, her determination of Griffin's RFC could conceivably have included greater limitations, foreclosing Griffin's ability to perform his past relevant work"); *accord Tiede*, 770 F. Supp. 3d at 973; *Garrett R.*, 2023 WL 5418301, at *6.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 17, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE